UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
DIEDRE V. RAY,

             Plaintiff,

                                                **MEMORANDUM AND ORDER**

        - against -
                                                 16 Civ. 2895 (NRB)

NEW YORK STATE INSURANCE FUND,

             Defendant.
-------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Diedre Ray, an African American woman, sues her employer, the New York State Insurance Fund (the "Fund"), alleging that the Fund discriminated and retaliated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964 and on the basis of race and disability in violation of the New York State Human Rights Law (NYSHRL). For the reasons set forth below, we dismiss Ray's complaint in its entirety: her NYSHRL claims are dismissed for lack of subject matter jurisdiction and her Title VII claims are dismissed for failure to state a claim.

I.   **Background**

     A.   **Factual Allegations[1]**

Ray is an African American woman who was employed by the Fund from April 1986 to July 29, 2015, in a "Hearing Representative"

_____
[1] These factual allegations are drawn from the operative First Amended Complaint (FAC), which we must accept as true for purposes of deciding this motion.

1

capacity within the deposition department for at least part of this time. FAC ¶¶ 14-15, 31-33, 74.[2] She was the only African American employee in her division and department during her employment, FAC ¶¶ 32-33, and none of the management personnel at the Fund were African American, FAC ¶ 34. These personnel included three individuals of particular relevance: Scott Rachelson, a Fund supervisor and Ray's superior and manager with control over Ray's employment, FAC ¶¶ 17-20, Lorraine Mirabella, another Fund supervisor and Ray's superior and manager with control over her employment, FAC ¶¶ 21-24, and Joseph Mullen, the Fund's director of personnel and also Ray's superior and manager with control over her employment, FAC ¶¶ 25-28.

Ray alleges that over the course of her employment, she experienced numerous instances of poor treatment based on her race. We recite Ray's allegations without repeatedly reiterating that they are allegations at this stage that we must accept as true. Specifically, Ray asserts that (1) "non African-American employees" were permitted "to maintain one location, while [she] would be required to travel to other boroughs," FAC ¶ 36; (2) that Caucasian employees were permitted "to leave work early on a regular basis" and "take time off" whereas African American employees were not, FAC ¶¶ 37-38; and (3) that Mirabella directed

---

[2] The FAC contains no allegations regarding Ray's job duties as a "hearing representative."

that other employees email their requests to Ray while other non-African American employees were permitted "to discuss their requests alike verbally," FAC ¶ 39. As a result of these practices, Ray filed a complaint against Mirabella on March 2, 2009. FAC ¶ 40.

Following this complaint against Mirabella, Ray was subject to further poor treatment. At some indeterminate time, Mirabella threatened that she "would create" complaints against Ray. FAC ¶ 42. In 2012, Rachelson yelled at Ray and called her a "nigger," which resulted in Ray filing a complaint against him. FAC ¶ 44. Further, the Fund refused to provide her with a replacement chair when her chair broke, even though a white coworker was provided "with the new equipment promptly" on his request. FAC ¶ 45. Based on the denial of her chair request, Ray "complained to the Defendant," on July 29, 2014, that that white coworker had been treated more favorably. FAC ¶ 46. On October 7, 2014, Ray again requested "to be treated with the same rights and respect as [her] white co-workers." FAC ¶ 47 (alteration in original). "On or about" the next day, October 8, Ray was not permitted to work from a different office location, though white coworkers were generally permitted to work from other locations. FAC ¶ 50. Ray complained about this disparity the same day. FAC ¶ 51.

The next week, on October 14, 2014, Ray and Mirabella had an altercation following a meeting in Mirabella's office. Mirabella

demanded that Ray leave, and while Ray was leaving, Mirabella grabbed Ray's left arm (which had been in a cast as a result of a prior injury), pushed Ray, and slammed her office door on Ray's left shoulder. FAC ¶¶ 53-54. Ray was taken to the hospital by ambulance and suffered severe emotional distress as a result of this altercation. FAC ¶ 55. Ray again complained to the Fund about Mirabella, FAC ¶ 56, and filed a police report regarding the incident the same day, FAC ¶ 57. One of Ray's African American coworkers saw the altercation, but was not acknowledged by the Fund as a witness. FAC ¶ 58.

The following week, on October 22, 2014, Ray was "interrogated" about the October 14 incident "in a small room" by two Fund employees, Alice Siegel and Jackie Herman, who selectively recorded parts of this interview. FAC ¶ 59. White employees who had previously (1) had a physical altercation in the workplace, (2) threatened to bomb the Fund office building, and (3) threatened a judge were not similarly interrogated. FAC ¶¶ 60-62.

Ray completed an EEOC intake questionnaire on February 17, 2015.[3] FAC ¶ 63; see Decl. of D. Stan O'Laughlin ex. 1 at 37-40, ECF No. 51 ("Feb. 2015 EEOC Form").[4] On this form, Ray identified

---

[3] The complaint relies on the intake questionnaire to plead administrative exhaustion. Accordingly, we deem the intake questionnaire integral to the complaint and will consider the contents of the questionnaire. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

[4] We note that the attachment of all of "plaintiff's EEOC filings" as a single exhibit to the O'Laughlin Declaration, with no delineation of which pages correspond to what filings made at what time, is less than entirely helpful to the Court.

4

race, age, disability, and retaliation as the bases for her discrimination claim. Feb. 2015 EEOC Form at 38. She stated that she was "assaulted by white supervisor Lorrain[e] Mirabel[la]" and that she was subsequently "interrogated for insubordination by Alice Siegel." Id. She further stated that Ryan McGrath, her immediate supervisor, "stood by and did nothing," and that, even after she had called the police and had been taken to the hospital, the Fund "responded by doing nothing to the attacker or future prevention." Id. Additionally, under the disability section of the questionnaire, Ray stated that, in July 2014, Ryan McGrath denied her the "ability to work at my field location whenever possible," but had "allowed a white coworker, John Hempel, to do so." Id. at 39. The end of the form provided two checkboxes and directed the respondent to "check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire." Id. at 40. Box 1 stated in part that "I want to talk to an EEOC employee before deciding whether to file a charge." Id. Box 2, which Ray checked, stated in part that "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above." Id.

Ray sent a letter to the EEOC on March 1, 2015, further describing her claims.[5]  FAC ¶ 64; see O'Laughlin Decl. ex. 1 at 44-45 ("Mar. 2015 Letter").  In the letter, Ray stated that "[she] was assaulted by a white supervisor" on October 14, 2014, that "not one staff member tried to stop the attack," and that she was "intimidated into an interrogation by Alice Siegel and Jackie Herman of personnel" afterwards, which she contended was an attempt "to intimidate [her] and retaliate against [her] for claiming Racial Discrimination in 7/2014 and retaliation for filing a complaint against a white supervisor."  Id. at 44.

On June 29, 2015, the Fund told Ray that she would be terminated effective July 28, 2015, FAC ¶ 71, and Ray was indeed terminated on that date, FAC ¶ 74.  The Fund contended that Ray's termination resulted from her having exhausted her worker's compensation time, but she, in actuality, had more time available.  FAC ¶¶ 72-73.  On July 28, 2015 -- the same day Ray was terminated -- the EEOC notified the Fund that it had received a charge of employment discrimination against the Fund.  FAC ¶ 70.

Ray filed an amended EEOC charge on September 25, 2015.[6]  FAC ¶ 65; see O'Laughlin Decl. ex. 1 at 14-18 ("Sept. 2015 EEOC Charge").  On this charge, Ray again identified race, retaliation,

---

[5] We also deem the letter integral to Ray's complaint and consider its contents.
[6] As with the February 2015 EEOC Form and Ray's March 2015 letter to the EEOC, we consider the amended EEOC charge because it is integral to Ray's complaint.

age, and disability as the bases of discrimination, and contended that the latest instance of discrimination occurred on October 28, 2014. Id. at 14. In particular, Ray identified the Fund's July 2014 refusal to accommodate her by allowing her to work at a remote location as a basis for disability discrimination and the October 2014 altercation with Mirabella as a basis for race discrimination. Id. at 14. Additionally, in a document that appears to have been attached to the amended charge,[7] Ray discussed (1) Mullen's refusal to provide her with a new office chair despite other staff having received new chairs; (2) the Fund's disparate application of a policy allowing employees to leave work early; (3) Mirabella's "allow[ing] [Ray] to be talked down to" and directing that other employees email requests to Ray and Ray's resulting filing of an Affirmative Action against Mirabella in 2009; (4) Rachelson's use of the racial epithet in 2012; (5) the October 14, 2014 altercation with Mirabella; (6) the subsequent interrogation by Alice Siegel and Jackie Herman.[8] Id. at 17.

Finally, after Ray's termination, Rachelson testified against her in a Workers' Compensation Board (WCB) proceeding on November 23, 2015, which she asserts was in retaliation for the complaint

---

[7] This document is undated, but bears a seal from the same notary who notarized the amended charge itself. We assume, in Ray's favor, that the document was in fact attached.

[8] Ray also identified in this document a number of instances of alleged disability discrimination, including her termination. As we will discuss, these instances are not relevant to the resolution of the Fund's motion to dismiss.

filed against him in 2012. FAC ¶ 78. The EEOC issued Ray a right-to-sue February 16, 2016, and this suit followed.

## B. Procedural History

Ray initially filed suit April 19, 2016, naming the Fund, Rachelson, Mirabella, and Mullen as defendants. Compl., ECF No. 1. The complaint asserted four causes of action: (1) a hostile work environment claim based on race[9] under Title VII, Compl. ¶¶ 85-98; (2) a retaliation claim under Title VII, Compl. ¶¶ 99-109; (3) a hostile work environment claim based on race and disability under the NYSHRL, Compl. ¶¶ 110-18; and (4) a retaliation claim under the NYSHRL, Compl. ¶¶ 119-23. After Ray had some difficulty achieving service of process on the defendants, the parties agreed that the individual defendants would be dismissed (thereby leaving the Fund as the only defendant) and that the Fund would waive any challenge to service of process. See Endorsed Letter, Jan. 23, 2017, ECF No. 30.

With the service of process issues resolved, the Fund filed a pre-motion letter seeking to move to dismiss Ray's complaint in its entirety. The Fund contended (1) that Ray's NYSHRL claims were barred by the Eleventh Amendment, (2) that Ray did not exhaust her administrative remedies and that her claims were time-barred

---

[9] Ray also asserts, under Title VII, that she experienced a hostile work environment based on disability. E.g., FAC ¶ 89. Disability, of course, is not a protected ground under Title VII. See 42 U.S.C. § 2000e-2(a) (designating "race, color, religion, sex, or national origin" as protected grounds).

in part based on the EEOC charges that she did file, (3) that Ray did not allege a sufficiently hostile work environment or that the hostility was motivated by racial animus, and (4) that Ray did not allege adverse employment actions that were causally connected to any protected activity that she undertook. See Letter from D. Stan O'Laughlin to the Court, June 1, 2017, ECF No. 35. After receiving Ray's response, see Letter from Leopold Raic to the Court, June 6, 2017, ECF No. 36, we granted Ray leave to file an amended complaint "to cure any alleged deficiencies raised by defendant's letter," Order, June 8, 2017, ECF No. 37.

Ray then filed the operative first amended complaint. Consistent with the parties' agreed-upon dismissal of the individual defendants, the FAC no longer names Rachelson, Mirabella, and Mullen as defendants. Additionally, the FAC contains (1) previously unasserted allegations regarding Ray's filing of an EEOC charge in February 2015 that was supplemented by a March 2015 letter and a September 2015 amended charge, FAC ¶¶ 6, 63-65, and (2) new allegations regarding Ray's termination in 2015: that she was notified of her termination on June 28, 2015, FAC ¶ 71, that she was told that her termination resulted from her having exhausted her worker's compensation time following her March 2012 injury, FAC ¶ 72, and that she in fact had additional workers' compensation time remaining, FAC ¶ 73. Besides these changes and several minor differences (such as the replacement of

the term "Defendants" with "Defendant"), the initial complaint and the FAC are identical.  Accordingly, the FAC continues to assert four causes of action: for hostile work environment under Title VII, FAC ¶¶ 83-96; for retaliation until Title VII, FAC ¶¶ 97-107; for hostile work environment under the NYSHRL, FAC ¶¶ 108-16; and for retaliation under the NYSHRL, FAC ¶¶ 117-21.

The Fund again moved to dismiss, identifying largely the same bases as in its first pre-motion letter.

## II.  Discussion

To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a complaint, we must "accept[] as true all factual allegations in the complaint, and draw[] all reasonable inferences in the plaintiff's favor." Barrows v. Burwell, 777 F.3d 106, 111 (2d Cir. 2015).  However, we "are not bound to accept as true a legal conclusion couched as a factual allegation," Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555), and "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint" in assessing sufficiency, DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

Following the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), "a plaintiff is not required to plead a prima facie case under [the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)] . . . to defeat a motion to dismiss" in the employment discrimination context. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015) (citing Littlejohn v. City of New York, 795 F.3d 297, 306, 311 (2d Cir. 2015)). That is, "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss," but it nonetheless "must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (alterations incorporated) (internal quotation marks omitted). Ultimately, both in the employment discrimination context and outside it, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." <u>Brown</u>
<u>v. Daikin Am., Inc.</u>, 756 F.3d 219, 225 (2d Cir. 2014) (quoting
<u>Iqbal</u>, 556 U.S. at 678).

Applying these standards, we consider whether each of the
claims that Ray asserts in the FAC has been sufficiently pleaded.

**A.  NYSHRL Claims**

We consider Ray's NYSHRL claims first, given the Fund's
jurisdictional objections.  We conclude that these claims must be
dismissed because the Eleventh Amendment deprives us of subject
matter jurisdiction.

The Eleventh Amendment proscribes, when brought in federal
court and in the absence of a state's consent, "a suit in which
the State or one of its agencies or departments is named as the
defendant." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S.
89, 100 (1984).  "This jurisdictional bar applies regardless of
the nature of the relief sought," <u>id.</u>, and "neither pendent
jurisdiction nor any other basis of jurisdiction may override" it,
<u>id.</u> at 121.  Accordingly, "[a] federal court must examine each
claim in a case to see if the court's jurisdiction over that claim
is barred by the Eleventh Amendment." <u>Oneida Indian Nation of New</u>
<u>York v. County of Oneida</u>, 617 F.3d 114, 132 (2d Cir. 2010)
(alteration in original) (quoting <u>Pennhurst</u>, 465 U.S. at 121).
"If [a defendant] is entitled to Eleventh Amendment immunity, we

would lack jurisdiction." Nat'l R.R. Passenger Corp. v. McDonald, 779 F.3d 97, 100 (2d Cir. 2015).

Ray's NYSHRL claims are barred. "Although in certain respects [the Fund] functions similarly to a private insurer, . . . it is nonetheless a State agency entitled to Eleventh Amendment immunity." Lipofsky v. Steingut, 86 F.3d 15, 16 (2d Cir. 1996) (per curiam). Further, "New York State has not consented to be sued in federal court under the NYSHRL," Baez v. New York, 629 F. App'x 116, 118 (2d Cir. 2015) (summary order), as "[n]othing in the text of the NYSHRL constitutes a waiver of immunity or consent to be sued," Goonewardena v. N.Y. State Workers' Comp. Bd., No. 09 Civ. 8244 (LTS), 2011 WL 4822553, at *4 (S.D.N.Y. Oct. 5, 2011) (alterations incorporated) (quoting Tuckett v. N.Y. State Dep't of Taxation & Fin., No. 99 Civ. 679 (BSJ), 2000 WL 1028662, at *2 (S.D.N.Y. July 26, 2000)). Ray contends that Emengo v. State, 143 A.D.3d 508, 509-10 (1st Dep't 2016), supports the proposition that the Fund may be sued for violations of the NYSHRL, but Emengo's implicit holdings regarding the Fund's amenability to suit in New York state court have no bearing on its amenability to suit in federal court in light of the Eleventh Amendment. The Eleventh Amendment, of course, bears only on the "Judicial power of the United States," U.S. Const. amend. XI, i.e., the power of federal courts, not that of state courts. Ray's NYSHRL claims are therefore dismissed for lack of subject matter jurisdiction.

**B.  Title VII Claims**

While a state (or agency thereof) cannot be sued in federal court for violations of state law absent consent, it may be sued in federal court for violations of Title VII.  See <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 455-56 (1976).  We accordingly turn to whether the FAC states a claim under Title VII, considering Ray's claims for hostile work environment, retaliation, and disparate treatment[10] in turn.

**1.  Hostile Work Environment**

Before considering Ray's hostile work environment claim on its merits, we first consider whether she has exhausted her administrative remedies as to that claim.

**a.  Exhaustion**

"[E]xhaustion of administrative remedies through the EEOC stands as an essential element of Title VII's statutory scheme," <u>Francis v. City of New York</u>, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotation marks omitted), but "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court," <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982).  "[T]he burden of pleading and proving [lack of] Title VII exhaustion lies with defendants and operates

---

[10]  The FAC is hardly clear as to whether it asserts a claim for discrimination beyond a hostile work environment and the FAC's first claim focuses primarily on hostile work environment.  Even though Ray has advanced an "imperfect statement of the legal theory supporting the claim asserted," the FAC's legal imprecision does not by itself warrant dismissal of a disparate treatment claim.  <u>Johnson v. City of Shelby</u>, 135 S. Ct 346, 346 (2014).

as an affirmative defense." <u>Hardaway v. Hartford Pub. Works Dep't</u>, 879 F.3d 486, 491 (2d Cir. 2018).

"Before bringing a Title VII suit in federal court, an individual must first present 'the claims forming the basis of such a suit . . . in a complaint to the EEOC or the equivalent state agency.'" <u>Littlejohn</u>, 795 F.3d at 322 (quoting <u>Williams v. N.Y.C. Hous. Auth.</u>, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam)); <u>see also</u> 42 U.S.C. § 2000e-5(f)(1). There need not, however, be perfect overlap between the claims raised administratively and the claims advanced in a Title VII suit. "Claims not raised in an EEOC complaint" nonetheless "may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." <u>Williams</u>, 458 F.3d at 70. "In determining whether claims are reasonably related, the focus should be 'on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" <u>Deravin v. Kerik</u>, 335 F.3d 195, 201 (2d Cir. 2003) (alteration in original) (quoting <u>Freeman v. Oakland Unified Sch. Dist.</u>, 291 F.3d 632, 637 (9th Cir. 2002)). "The central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases.'" <u>Williams</u>, 458 F.3d at 70 (quoting <u>Deravin</u>, 335 F.3d at 202).

Though "the 'reasonably related' inquiry requires a fact-intensive analysis," <u>Mathirampuzha v. Potter</u>, 548 F.3d 70, 76 (2d

Cir. 2008), the Second Circuit has recognized that "[h]ostile environment claims are different in kind from discrete acts," id. (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002)). Accordingly, courts in this district have consistently held that "allegations in the EEOC charge [that] relate solely to several discrete instances of alleged discrimination or retaliation . . . are insufficient to exhaust a hostile work environment claim." Batiste v. City Univ. of N.Y., No. 16 Civ. 3358 (VEC), 2017 WL 2912525, at *6 (S.D.N.Y. July 7, 2017) (quoting Perez v. N.Y. & Presbyterian Hosp., No. 05 Civ. 5749 (LBS), 2009 WL 3634038, at *10 (S.D.N.Y. Nov. 3, 2009)); see also Wright v. N.Y.C. Off-Track Betting Corp., No. 05 Civ. 9790 (WHP), 2008 WL 762196, at *3 (S.D.N.Y. Mar. 24, 2008) ("[P]resenting a disparate treatment or retaliation claim to the EEOC will not exhaust a hostile work environment claim."). Rather, "to properly exhaust [such a] claim, a plaintiff must actually allege a hostile work environment claim in his EEOC Charge." Khater v. API Indus., Inc., No. 16 Civ. 6695 (CS), 2017 WL 6515531, at *3 (S.D.N.Y. Dec. 19, 2017) (alteration in original) (quoting Levitant v. Hilt N.Y. Waldorf LLC, No. 10 Civ. 4667 (PKC), 2012 WL 414515, at *7 (S.D.N.Y. Feb. 6, 2012)). Ray offers no reason for departing from this well-established line of authority.

Accordingly, Ray's hostile work environment claim fails for lack of administrative exhaustion. At no point in her February

2015 intake questionnaire, her March 2015 letter, or her September 2015 amended charge did Ray explicitly assert that she was being subjected to a hostile work environment.[11]  Nor did her filings raise a hostile work environment claim in substance without attaching the specific label.  Rather, those filings assert, at most, six discrete instances of maltreatment occurring over a five-year period between 2009 and 2014 (if not longer).  Allegations of these discrete incidents do not exhaust a Title VII hostile work environment claim, see, e.g., Batiste, 2017 WL 2912525, at *6; Wright, 2008 WL 762196, at *3, and Ray's failure to exhaust her administrative remedies alone warrants dismissal of her hostile work environment claim.

### b.    Merits

Ray's Title VII hostile work environment claim additionally fails because the FAC does not plausibly allege such a claim.  "To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive -- that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's

---

[11] We consider more extensively below whether the February 2015 intake questionnaire has exhaustive effect.  The resolution of this question has no bearing on whether Ray failed to exhaust her hostile work environment claim.

[protected class].'" Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (omission in original) (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)). This test "has both an objective and subjective component": the work environment must both be "objectively hostile or abusive," and the "victim must also subjectively perceive" the environment as such. Petrosino v. Bell Atl., 385 F.3d 210, 221 (2d Cir. 2004) (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)).

"Accordingly, to analyze a hostile work environment claim, we are required to look to the [complaint] as a whole and assess the totality of the circumstances." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010). "Factors that a court might consider in assessing the totality of the circumstances include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Patane, 508 F.3d at 113 (internal quotation marks omitted). "[A] plaintiff need not show that her hostile working environment was both severe and pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination of these elements, to have altered her working conditions." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012) (quoting Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112, 119 (2d Cir. 2010)). Though "a single incident

of sufficient severity may so alter the terms and conditions of employment as to create such an environment," "isolated incidents ordinarily will not rise to the level of a hostile work environment." Patterson v. County of Oneida, 375 F.3d 206, 227 (2d Cir. 2004).

The FAC sufficiently pleads that Ray subjectively perceived the working environment as hostile and abusive, but the handful of incidents alleged in the FAC over the course of five years are neither sufficiently severe nor sufficiently pervasive to create an objectively hostile work environment. None of the incidents are of severity comparable to that of the single incidents found to have been sufficient, standing alone, to create a hostile work environment, such as that of a "lengthy, vulgar tirade against the plaintiff in the presence of a large group of co-workers," Raspardo v. Carlone, 770 F.3d 97, 118 (2d Cir. 2014) (citing Howley v. Town of Stratford, 217 F.3d 141, 149, 154 (2d Cir. 2000)), or that of a sexual assault, see Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001).

Nor are the incidents alleged in the FAC, occurring over a number of years taken by a number of different Fund employees, "sufficiently continuous and concerted to have altered the conditions of [Ray's] working environment." Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)). Raspardo, in

which the Second Circuit dismissed one plaintiff's claim alleging hostile work environment but sustained a second plaintiff's claim, see 770 F.3d at 118-19, is instructive. The "four principal incidents" and "over ten" additional comments identified by the second plaintiff, "all over a period of just one year," were sufficient to support a hostile work environment claim, but the "two incidents," "as well as the use of [a sexual] nickname, spread over more than a year," identified by the first plaintiff were insufficient as a matter of law. Id. The incidents that Ray alleges are far closer to the conduct identified by the first plaintiff in Raspardo and are equally insufficient. See also Feingold, 366 F.3d at 150 & n.9 (comparing "almost daily" anti-Semitic remarks experienced by the plaintiff, which were sufficient to state a hostile work environment claim, and similar comments that "were isolated" and "made infrequently over a period of five years," which were insufficient "although arguably more vicious").

Accordingly, Ray's hostile work environment fails because the FAC does not allege an objectively hostile or abusive environment as required under Title VII in addition to being unexhausted. Though the FAC alleges -- assuming the allegations are true as we must -- conduct that is certainly objectionable, "Title VII simply 'does not set forth a general civility code for the American workplace.'" McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 76

(2d Cir. 2010) (quoting <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)).  Ray's Title VII hostile work environment claim is dismissed.

### 2. Retaliation

Turning to Ray's retaliation claim, we first address the Fund's statute of limitations and exhaustion arguments before considering the merits.

### a. Statute of Limitations

The Fund contends, at the threshold, that Ray's February 2015 EEOC intake questionnaire does not constitute a "charge" for either statute of limitations or exhaustion purposes.  Because a "charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1),[12] whether several of the discriminatory acts alleged by Ray may support a retaliation claim rests on our resolution of this question.

Title VII does not define the term "charge" by statute, nor has the EEOC promulgated regulations specifically delineating what constitutes a "charge" in the Title VII context.  However, in <u>Federal Express Corp. v. Holowecki</u>, 552 U.S. 389, 395 (2008), the Supreme Court considered whether an intake questionnaire

---

[12] "The three-hundred-day look-back period is in fact an extended period that Title VII affords to plaintiffs complaining about conduct that occurred in a state with its own antidiscrimination enforcement mechanisms, which includes New York." <u>Duplan v. City of New York</u>, 888 F.3d 612, 621 n.7 (2d Cir. 2018).

constituted a "charge" filed with the EEOC, which is also a prerequisite to filing suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626(d). Holowecki concluded that the intake questionnaire submitted by the plaintiff in that case constituted a charge, adopting the rule that "a filing is deemed a charge if the document reasonably can be construed to request agency action and appropriate relief on the employee's behalf," 552 U.S. at 404, and noting that the questionnaire at issue "was supplemented with a detailed six-page affidavit" and included a request that the EEOC "force [the employer] to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created [by the complained-of policy]," id. at 405.

While Holowecki relied on the plaintiff's supplemental affidavit and additional request to conclude that the intake questionnaire was a charge, "the EEOC has [since] modified its form Intake Questionnaire . . . to facilitate the determination whether such a questionnaire, in any particular case, constitutes a charge." Brown v. City of New York, No. 11 Civ. 2915 (PAE), 2013 WL 3789091, at *8 (S.D.N.Y. July 19, 2013). Specifically, the EEOC modified its intake questionnaire to offer the two checkboxes presented to Ray: Box 1 stating that "I want to talk to an EEOC employee before deciding whether to file a charge," and Box 2 stating that "I want to file a charge of discrimination, and

I authorize the EEOC to look into the discrimination I described above." When a would-be plaintiff checks the second box indicating that she "wish[es] to file a charge of discrimination" and that she "authorize[s] the EEOC to look into the discrimination" described in the questionnaire -- and the intake questionnaire satisfies the various criteria set forth in the EEOC's regulations[13] -- the intake questionnaire at issue constitutes a charge for statute of limitations and exhaustion purposes.  See Brown, 2013 WL 3789091, at *8-9; see also Acheampong v. N.Y.C. Health & Hosps. Corp., No. 11 Civ. 9205 (LTS), 2015 WL 1333242, at *7-8 (S.D.N.Y. Mar. 25, 2015); Robinson v. Macy's, No. 14 Civ. 4937 (CM), 2014 WL 6997598, at *6-7 (S.D.N.Y. Dec. 5, 2014); Harris v. NYU Langone Med. Ctr., No. 12 Civ. 454 (RA), 2013 WL 5425336, at *2 (S.D.N.Y. Sept. 27, 2013).  Ray, on her intake questionnaire, unambiguously checked Box 2, expressing her desire that the EEOC investigate the discrimination of which she complained.  That is sufficient to render the intake questionnaire a "charge" for statute of limitations and exhaustion purposes.

The Fund offers no reason to stray from this well-established post-Holowecki line of authority.  Rather, the single authority

---

[13] At minimum, the "charge shall be in writing and signed."  29 C.F.R. § 1601.9.  Additionally, the EEOC must be able "to identify the parties, and to describe generally the action or practices complained of" based on the written statement.  Id. § 1601.12(b).  There can be no dispute that Ray's intake questionnaire was a written document and provided the EEOC with sufficient information to identify the Fund and inform it of Ray's complaint well before Ray's September 2015 amended charge.

that it (somewhat misleadingly) cites in support of the blanket proposition that an intake questionnaire is not a charge, <u>Simpson v. City of N.Y. Dep't of Hous. Pres. & Dev.</u>, No. 08 Civ. 185 (SHS)(KNF), 2009 WL 996388 (S.D.N.Y. Apr. 13, 2009), did not address the Supreme Court's decision in <u>Holowecki</u>, held only that a "questionnaire <u>generally</u> does not meet the requirements for filing a charge," and noted that the questionnaire in question did not evidence "an intent by [the plaintiff] to 'activate' the EEOC's administrative process," <u>id.</u> at *6 (emphasis added). Those simply are not the facts of this case, and <u>Simpson</u> is particularly inapt following the EEOC's post-<u>Holowecki</u> revisions to its intake questionnaire.[14] Because Ray's February 2015 intake questionnaire constitutes a charge, her retaliation claims are timely to the extent they are based on events occurring fewer than 300 days before Ray's February 17, 2015 intake questionnaire,[15] or those after April 23, 2014.[16]

---

[14] Further, the Fund's argument cannot be reconciled with the EEOC's July 2015 notice to the Fund that Ray had filed a charge of discrimination against it, two months <u>prior</u> to the September 2015 amended charge that the Fund contends to be the only charge in this case.

[15] The submission of Ray's questionnaire on February 17, 2015 is the operative date rather than the EEOC's March 11, 2015 receipt of that questionnaire. <u>See</u> 42 U.S.C. § 2000e-5(e)(1) (requiring that a charge "be filed" within 300 days, not that it be received).

[16] In her opposition, Ray refers to the availability of equitable tolling in the Title VII context. This statement is correct as a matter of law, <u>see</u> <u>Morgan</u>, 536 U.S. at 113 ("[The] time period for filing a charge is subject to equitable doctrines such as tolling or estoppel."), but Ray offers no argument that tolling is "necessary to prevent unfairness" because she "is not at fault for her lateness in filing," <u>Veltri v. Bldg. Serv. 32B-J Pension Fund</u>, 393 F.3d 318, 322 (2d Cir. 2004).

###    b.    Merits

While Ray need not specifically plead each element a prima facie case for retaliation,[17] she nonetheless "must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against [her], (2) 'because' [s]he has opposed any unlawful employment practice." Vega, 801 F.3d at 90; see also 42 U.S.C. § 2000e-3.  That is, Ray must plead (1) engagement in opposition to an unlawful employment practice; (2) an adverse employment action; and (3) factual matter rendering plausible an inference of causation between her protected activity and the adverse employment action.  See Vega, 801 F.3d at 90.

"For purposes of determining whether an activity is protected, [42 U.S.C. § 2000e-3] includes both an opposition clause and a participation clause." Littlejohn, 795 F.3d at 316 (internal quotation marks omitted)).  "The opposition clause makes it unlawful for an employer to retaliate against an individual because she 'opposed any practice' made unlawful by Title VII," whereas "the participation clause only encompasses participation in formal EEOC proceedings." Id.  For purposes of the opposition clause, a plaintiff "need not establish that the conduct she opposed was actually a violation of Title VII, but only that she

---

[17] However, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." Littlejohn, 795 F.3d at 311 n.9 (quoting Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013)).

possessed a good faith, reasonable belief that the underlying employment practice was unlawful under that statute." Summa v. Hofstra Univ., 708 F.3d 115, 126 (2d Cir. 2013) (internal quotation marks omitted). "[W]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." Littlejohn, 795 F.3d at 317 (emphasis omitted) (omission in original) (quoting Crawford v. Metro. Gov't of Nashville & Davidson Cty., 555 U.S. 271, 276 (2009)).

Ray's complaint adequately pleads a number of protected activities. Specifically, Ray alleges that she (1) filed a complaint against Mirabella in March 2009, FAC ¶ 40; (2) filed a complaint against Rachelson in 2012, FAC ¶ 44; (3) complained in July 2014 about the Fund's failure to provide her with a functional chair, FAC ¶ 46; (4) requested on October 7, 2014 that she be treated with "the same rights and respect" as white employees, FAC ¶ 47; (5) complained on October 8, 2014 after her request to work from a remote location was denied, FAC ¶ 51; (6) filed a police report and complained about the assault in Mirabella's office, FAC ¶¶ 56-57; and (7) began the EEOC administrative process in February 2015, FAC ¶ 63.

"[A]n adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a

charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington, 548 U.S. at 57). This standard, which does not require that an adverse action impact "an employee's 'compensation, terms, conditions, or privileges of employment,'" Kessler v. Westchester Cty. Dep't of Soc. Servs., 461 F.3d 199, 208 (2d Cir. 2006), therefore "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII," Vega, 801 F.3d at 90. However, "'[p]etty slights or minor annoyances that often take place at work and that all employees experience' do not constitute actionable retaliation." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington, 548 U.S. at 68). "Material adversity is to be determined objectively, based on the reactions of a reasonable employee. 'Context matters,' as some actions may take on more or less significance depending on the context." Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556, 568 (2d Cir. 2011). Because the Second Circuit's "standard for First Amendment retaliation claims has always been the equivalent to the standard set forth in Burlington Northern," Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 227 (2d Cir. 2006), cases addressing adverse actions in the First Amendment retaliation context apply with equal force in the Title VII retaliation context.

Ray's complaint lists a number of actions that were taken against her following her protected activity: (1) that Mirabella

threatened (at an unidentified time) that she would "create complaints" against Ray, FAC ¶ 42; (2) that Rachelson used a racial epithet in 2012, FAC ¶ 44; (3) that Ray was denied a functional office chair, FAC ¶ 45; (4) that she was denied the opportunity to work from a different office location on October 8, 2014, FAC ¶ 50; (5) that Mirabella assaulted Ray on October 14, 2014, FAC ¶ 53; (6) that Alice Siegel and Jackie Herman interrogated Ray on October 22, 2014, FAC ¶ 59; (7) that Ray was terminated effective July 28, 2015 after having been notified on June 29, 2015, FAC ¶¶ 71, 74; and (8) that Rachelson testified against her in a Workers' Compensation Board (WCB) hearing in November 2015, FAC ¶ 78. We consider the extent to which any of these actions may form the basis of a retaliation claim.

First, Mirabella's threat to "create complaints" cannot support a retaliation claim because it was not exhausted through Ray's EEOC filings. Further, Ray does not allege that this threat was made on or after April 23, 2014, such that it would be timely. Rather, Ray offers no specifics as to when Mirabella made this threat, and this failure "to state with even a modicum of specificity when the relevant events occurred" offers yet another basis on which to conclude that Mirabella's threat here cannot support a retaliation claim. Carter v. Verizon, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *15 (S.D.N.Y. Jan. 20, 2015) (quoting

<u>Henry v. NYC Health & Hosps. Corp.</u>, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (Engelmayer, J.)).

Second, Rachelson's use of a racial epithet in 2012 cannot support a retaliation claim because the conduct complained of occurred well before April 23, 2014. The claim is untimely.

Third, the refusal to provide Ray with a functional chair also does not sustain Ray's retaliation claim. As an initial matter, Ray alleges only that the Fund refused to provide her with a functional chair "at all times herein relevant," FAC ¶ 45, and this allegation is too "non-specific as to time to serve as a basis for her retaliation claims." <u>Carter</u>, 2015 WL 247344, at *15; <u>Henry</u>, 18 F. Supp. 3d at 412. Even if we were to infer that this denial occurred before July 29, 2014 (when Ray complained about the denial, FAC ¶ 46), it must have occurred after April 23, 2014 in order to be timely.

But a denial in April 2014 would still be too remote in time from Ray's preceding protected activity -- her complaints against Mirabella in 2009 and against Rachelson in 2012 -- to support an inference of causation. As the Supreme Court has emphasized, "temporal proximity must be very close" to support such an inference. <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273 (2001) (internal quotation marks omitted). The Second Circuit has declined to establish a "bright line to define the outer limits beyond which a temporal relationship is too attenuated," <u>Abrams v.</u>

Dep't of Pub. Safety, 764 F.3d 244, 254 (2d Cir. 2014), but a temporal gap of more than a few months will generally be insufficient to raise a plausible inference of causation without more, see Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (Sullivan, J.) (collecting post-Breeden authority); see also, e.g., Dressler v. City Sch. Dist. of the City of N.Y., No. 15 Civ. 3696 (JPO), 2016 WL 4367967, at *4 (S.D.N.Y. Aug. 15, 2016); Carter v. Verizon, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *14 (S.D.N.Y. Jan. 20, 2015); Brown v. City of New York, No. 14 Civ. 2668 (PAE), 2014 WL 5861995, at *2-3 & n.2 (S.D.N.Y. Nov. 12, 2014); Williams v. City of New York, No. 11 Civ. 9679 (CM), 2012 WL 3245448, at *11 (S.D.N.Y. Aug. 8, 2012); Mazurkiewicz v. N.Y.C. Health & Hosps. Corp., No. 09 Civ. 5962 (WHP), 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010).  The FAC contains no other allegations bearing on the Fund's retaliatory motive in denying Ray a functional chair, and the temporal gap of more than a year cannot raise a plausible inference of retaliatory motive.

Fourth, the denial of Ray's remote work request from the Fund's 125th Street location on days when she was "off the calendar" cannot support her retaliation claim.[18]  While Ray did raise the denial with the EEOC and it is timely, the mere

---

[18] The FAC does not explain what "off the calendar" status means.  We interpret the term to refer to days where Ray's physical presence at her usual working location was not strictly necessary.

inconvenience of working from a different location does not, without some other impact, rise to the level of an adverse employment action. "The courts in this Circuit have generally declined to find that transfers (or denials of transfers) amount to adverse employment actions, even in the context of a retaliation claim, where the action results merely in 'an inconvenience, such as an increased commute or unfavorable hours.'" Taylor v. N.Y.C. Dep't of Educ., No. 11 Civ. 3582 (JG), 2012 WL 5989874 (E.D.N.Y. Nov. 30, 2012) (quoting Antonmarchi v. Consol. Edison Co. of N.Y. Inc., No. 03 Civ. 7735 (LTS), 2008 WL 4444609, at *15 (S.D.N.Y. Sept. 29, 2008)); see Hoag v. Fallsburg Cent. Sch. Dist., 279 F. Supp. 3d 465, 486-87 (S.D.N.Y. 2017) (Seibel, J.). The denial of Ray's request to work remotely is of even less significance: it was not a permanent transfer, it pertained only to her off-calendar days, and it did not inconvenience her but rather denied her a convenience by merely requiring her to work from her normal working location. Taken in context, the denial of Ray's remote work request cannot rise to the level of an adverse employment action.

Fifth, the October 14, 2014 altercation in Mirabella's office also does not support a claim of retaliation, even though "[p]hysical assaults can constitute adverse actions for purposes of a retaliation claim." Kelly v. N.Y. State Office of Mental Health, 200 F. Supp. 3d 378, 404 (E.D.N.Y. 2016) (Matsumoto, J.); see, e.g., Cortes v. City of New York, 700 F. Supp. 2d 474, 482

(S.D.N.Y. 2010) (Swain, J.) (finding that plaintiff's allegations of physical assault sufficiently pleaded an adverse employment action); Manon v. Pons, 131 F. Supp. 3d 219, 233 (S.D.N.Y. 2015) (Caproni, J.) ("The physical assault that [plaintiff] describes -- during which [defendant] allegedly ran full-throttle into her, causing significant injury -- would be sufficient to dissuade a reasonable person from exercising her First Amendment rights").[19] While an alleged assault is not an adverse employment action if, for example, the assailant makes no contact with the plaintiff, cf. Ejiogu v. Grand Manor Nursing & Rehab. Ctr., No. 15 Civ. 505 (DLC), 2017 WL 1322174, at *3 (S.D.N.Y. Apr. 5, 2017), Ray alleges that the she was "taken to hospital by ambulance" after Mirabella "grabbed Plaintiff's left arm (which was in cast), pushed Plaintiff, and slammed her office door on Plaintiff's left shoulder." FAC ¶¶ 53-55.

Nonetheless, Ray does not allege that Mirabella assaulted her with retaliatory motive. As an initial matter, the FAC is devoid of any allegation, however conclusory, that the assault was

---

[19] The Fund correctly argues that Batista v. Waldorf Astoria, No. 13 Civ. 3226 (LGS), 2015 WL 4402590 (S.D.N.Y. July 20, 2015), held that an assault is not an adverse employment action in the retaliation context. Batista reasoned that the assault did not "permanently alter[] Plaintiff's working conditions," id. at *11, and cited the Second Circuit's holding in Mathirampuzha that supervisor violence did not amount to an adverse employment action in the discrimination context (as opposed to the retaliation context), see 548 F.3d at 79. Accordingly, while we agree supervisor violence generally is not an adverse employment action for purposes of a Title VII discrimination claim, we respectfully disagree with Batista to the extent it holds that supervisor violence can never constitute an adverse employment action for purposes of a Title VII retaliation claim.

prompted by Ray's prior protected activity or that the assault would not have occurred but-for Ray's prior complaints. Rather, the FAC's retaliation allegations focus on Mirabella's threat to "create complaints," Ray's termination, and Rachelson's testimony against Ray in a subsequent WCB hearing. Similarly, Ray does not argue in her opposition that Mirabella's assault was retaliatory; rather, her opposition recites the allegations in the complaint and focuses specifically on Mirabella's threat to "create complaints" and Ray's termination. Further, Ray does not allege that Mirabella was aware of her July 2014 or October 2014 complaints about discrimination (her only protected activity of sufficient temporal proximity), nor does the FAC give rise to such an inference in light of Ray's nonspecific allegations that her prior complaints were made "to the Defendant" -- the Fund.[20] Accordingly, we conclude that the October 14, 2014 assault does not support Ray's retaliation claim because the FAC does not raise a plausible inference that the assault was driven by a retaliatory motive on Mirabella's part.

Sixth, the October 22, 2014 "interrogation" by Alice Siegel and Jackie Herman cannot sustain Ray's retaliation claim. Even accepting Ray's characterization of the interview, an interrogation of the type described does not constitute an adverse

---

[20] Ray's initial complaint, which named Mirabella, Mullen, and Rachelson as defendants was no more specific; her initial complaint alleged that she complained "to the Defendants." Compl. ¶¶ 53, 54, 58.

33

employment action as a matter of law, especially when it was unaccompanied by any further consequences.  See Tepperwien, 663 F.3d at 569-70 (reasoning that being subject to three fact-finding investigations by the employer did not support Title VII retaliation); see also Wrobel v. County of Erie, 692 F.3d 22, 31-32 (2d Cir. 2012) (holding that an "interrogation" and additional questioning were "de minimis slights and insults that do not amount to retaliation" in the First Amendment context).

Seventh, Ray's termination in July 2015 is unquestionably an adverse employment action, but the complaint does not plausibly allege that her termination occurred "'because' [s]he has opposed any unlawful employment practice." Vega, 801 F.3d at 90.  While we cannot consider the Fund's proffered explanation (that Ray was terminated by operation of section 71 of the New York Civil Service Law) on a Rule 12(b)(6) motion, see Littlejohn, 795 F.3d at 311 ("The plaintiff cannot reasonably be required to allege more facts in the complaint than the plaintiff would need to defeat a motion for summary judgment made prior to the defendant's furnishing of a non-discriminatory justification." (emphasis added)), Ray's allegations make clear that the Fund had decided to terminate her -- and informed her of that decision -- on June 29, 2015, FAC ¶ 71, one month before the EEOC notified the Fund of Ray's February 2015 charge, FAC ¶ 70.  Because the notice of termination is the operative act, cf. Shultz v. Congregation Shearith Israel, 867

F.3d 298, 305 (2d Cir. 2017) ("[A] discrimination claim accrues upon notice of termination, rather than upon the implementation of that decision."), this sequence of events renders implausible any inference that Ray's EEOC filing caused the Fund's termination decision. The other protected activity in which Ray engaged, all of which occurred at least eight months prior to Ray being informed of her termination, is too remote in time to support a plausible inference of causation. See, e.g., Breeden, 532 U.S. at 273; Brown, 2014 WL 5861995, at *2-3.

Eighth, Rachelson's November 2015 testimony against Ray at a WCB hearing also fails to sustain her retaliation claim. As an initial matter, some question remains as to whether Rachelson's testimony, unaccompanied by a denial or reduction of workers' compensation benefits, constitutes an adverse employment action. Cf. Campbell v. N.Y.C. Transit Auth., 93 F. Supp. 3d 148, 170 (E.D.N.Y. 2015) (Brodie, J.) ("[T]he [employer's] decision to controvert [plaintiff's] workers' compensation claim did not constitute adverse action [for purposes of a discrimination claim] as it did not result in a material loss of benefits."). But even accepting that Rachelson's testimony against her constituted an adverse employment action, the three-year temporal gap between Ray's 2012 complaint against Rachelson, FAC ¶ 44, and Rachelson's November 2015 WCB testimony dispositively undercuts any inference

of causation.  See, e.g., Breeden, 532 U.S. at 273; Brown, 2014 WL
5861995, at *2-3.

Though we conclude that none of the individual acts identified
in Ray's complaint constitute an adverse employment action, the
Second Circuit has instructed that "the alleged acts of retaliation
need to be considered both separately and in the aggregate, as
even minor acts of retaliation can be sufficiently 'substantial in
gross' as to be actionable." Hicks, 593 F.3d at 165. But the
eight acts that Ray alleges -- dispersed over multiple years and
many of which individually are de minimis -- do not add up to
actionable retaliation.  And as the Second Circuit has noted,
"while the test is an objective one, it is relevant that [Ray]
[her]self was not deterred from complaining -- [s]he complained
numerous times." Tepperwien, 663 F.3d at 572.

Because Ray has not plausibly alleged that the Fund took an
adverse employment action against her because of her opposition to
the Fund's allegedly unlawful employment practices, her Title VII
retaliation claim fails.  It is accordingly dismissed.

### 3.  Discrimination

Finally, we consider whether the FAC adequately pleads a
discrimination claim.  To state a Title VII discrimination claim,
"a plaintiff must plausibly allege that (1) the employer took
adverse action against him and (2) his race, color, religion, sex,
or national origin was a motivating factor in the employment

36

decision." Vega, 801 F.3d at 86. Because "Title VII makes it unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,'" Hicks, 593 F.3d at 164 (quoting 42 U.S.C. § 2000e-2(a)), an adverse action must effect "a materially adverse change in the terms and conditions of employment" and must be "more disruptive than a mere inconvenience or an alteration of job responsibilities," Vega, 801 F.3d at 85 (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (quoting Terry, 336 F.3d at 138).

Before considering individually each act alleged in the FAC, we first address Ray's argument that she has pleaded a "pattern and practice" of discrimination that is properly treated as a single claim, thereby entitling her to rely on discriminatory acts occurring before the 300-day period under the Supreme Court's decision in Morgan, 536 U.S. 101. This argument misreads Morgan and misunderstands the purpose of a "pattern-or-practice" claim.

In Morgan, the Supreme Court held a plaintiff may rely on acts occurring outside the 300-day period to support a hostile work environment claim, 536 U.S. at 120-21, reasoning that

"[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct," id. at 115. Accordingly, "[a]lthough many of the acts upon which [the plaintiff's] claim depends occurred outside the 300 day filing period, we cannot say that they are not part of the same actionable hostile environment claim." Id. at 120-21. However, in so holding, the Supreme Court explicitly distinguished hostile work environment claims and claims based on "discrete discriminatory acts," which "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113. Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. As the Second Circuit has emphasized following Morgan, "[d]iscrete acts [such as denials of promotions, transfers, and firings], which fall outside the limitations period, cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period." Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 157 (2d Cir. 2012).[21] Each of the acts that Ray alleges here is, at most, a discrete discriminatory act, even though she alleges they were taken pursuant to a general "pattern or practice" of discrimination.

---

[21] The relevant part of the one authority on which Ray relies in arguing the contrary was reversed by the Second Circuit's decision in Chin. See Port Auth. Police Asian Jade Society of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J., 681 F. Supp. 2d 456 (S.D.N.Y. 2010), aff'd in part, rev'd in part, and remanded sub nom. Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135.

Indeed, Ray's argument misapprehends the meaning of the term "pattern or practice." "Title VII disparate treatment claims are of two types: (1) individual claims, which follow the familiar McDonnell Douglas burden-shifting framework, and (2) pattern-or-practice claims, which focus on allegations of widespread discrimination and generally follow the Teamsters burden-shifting framework." Reynolds v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012) (citing McDonnell Douglas, 411 U.S. 792, and Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977)). That is, "the term 'pattern or practice' . . . refer[s] not to an element of a [Title VII] claim, but to the method of proof that the Supreme Court endorsed in Teamsters for the adjudication of such claims." Chin, 685 F.3d at 147-48. "[T]he pattern-or-practice method of proof is not available to nonclass, private plaintiffs" like Ray. Id. at 150.[22]

Accordingly, we analyze separately each of the discrete acts alleged in the FAC: requiring Ray to travel to other boroughs, FAC ¶ 36; not allowing Ray to leave work early, FAC ¶¶ 37-38; directing other employees to email Ray instead of communicating verbally, FAC ¶ 39; and the eight acts considered in connection with Ray's retaliation claim. Only one -- Ray's termination -- suffices.

---

[22] The Fund correctly notes that a number of courts in this district have adopted such a rule, as well as six other Courts of Appeals. So has the Second Circuit, the one of particular relevance to us.

See Vega, 801 F.3d at 85 ("Examples of materially adverse changes include termination of employment . . . .").

First, the allegation that Ray was required to travel to other boroughs is unexhausted and cannot support Ray's discrimination claim. See Williams, 458 F.3d at 70.

Second, while Ray exhausted the allegation that she was not allowed to leave work early (and further assuming that the claim is timely), the requirement that she maintain her regular working hours, axiomatically, cannot amount to an adverse change the "terms or conditions" of her employment. Vega, 801 F.3d at 85.

Third, the allegation that Ray was required to accept email requests instead of verbal requests, again assuming its timeliness, is too insignificant to constitute an adverse employment action. Even accepting that Ray "felt humiliated and embarrassed" as a result, FAC ¶ 40, the receipt of email requests rather than verbal requests would at most be a "mere inconvenience," Vega, 801 F.3d at 85, not an actionable adverse employment action.

Fourth, Mirabella's threat to "create complaints" cannot support Ray's discrimination claim because it is unexhausted. See Williams, 458 F.3d at 70.

Fifth, Rachelson's 2012 use of a racial epithet is insufficient because it occurred before than April 23, 2014, 300 days before the date of Ray's February 2015 EEOC intake

questionnaire. Ray's allegations of subsequent discriminatory acts do not bring that act within the 300-day period. See Chin, 685 F.3d at 157.

Sixth, the refusal to replace Ray's chair does not rise to the level of an adverse employment action. While "a refusal to provide equipment" that "significantly interferes with or precludes job performance, or creates unreasonably dangerous conditions," may amount to an adverse employment action, courts have generally held "that the failure to provide the desired equipment does not constitute an adverse employment action" when "the equipment at issue is more desirable, but the job can be performed without it." Dauer v. Verizon Commc'ns, Inc., 613 F. Supp. 2d 446, 456-57 (S.D.N.Y. 2009) (Gardephe, J.) (internal quotation marks omitted), vacated and remanded on other grounds sub nom. Pucino v. Verizon Wireless Commc'ns, Inc., 618 F.3d 112. While a more functional chair would unquestionably have been preferable, the FAC lacks any allegation that the broken chair went beyond merely causing Ray discomfort such that it substantially interfered with her job performance or created unreasonably dangerous conditions. Indeed, the fact that Ray continued to "satisfactor[il]y perform[] her duties and responsibilities," FAC ¶ 16, following the denial of her request for a new chair would strongly suggest that the denial of a new chair did not significantly interfere with her job performance.

Accordingly, Ray has not plausibly alleged that the denial of her request for a new chair amounts to an adverse employment action.

Seventh, the denial of Ray's request to work from a different location -- even assuming beyond the FAC that it inconvenienced Ray -- is not an adverse employment action. See Formilien v. Beau Dietl & Assocs., Inc., No. 10 Civ. 3077 (NRB), 2012 WL 2359819, at *10 ("Even where the inconvenient location of the new workplace combines with less favorable hours of employment, a transfer may not amount to an adverse employment action."); Antonmarchi, 2008 WL 4444609, at *15; Johnson v. Eastchester Union Free Sch. Dist., 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002) (Stein, J.). This principle applies with particular force here, where the requested transfer was only temporary and pertained only to a limited number of days.

Eighth, Mirabella's assault is not an adverse employment action. The Second Circuit has concluded that allegations that a supervisor "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye" such that the plaintiff subsequently "required eye surgery," Mathirampuzha, 548 F.3d at 73, did not amount to an adverse employment action for discrimination purposes, id. at 79. Mirabella's physical encounter with Ray "is certainly no more severe than the encounter at issue in Mathirampuzha, and thus is not an adverse employment action." Benjamin v. City of Yonkers,

No. 13 Civ. 8699 (VB), 2014 WL 6645708, at *7; see also Sethi v. Narod, 12 F. Supp. 3d 505, 527 (E.D.N.Y. 2014) (Brodie, J.) (rejecting supervisor violence as basis for adverse action).

Ninth, the interrogation by Alice Siegel and Jackie Herman is not an adverse employment action, particularly because it was unaccompanied by any disciplinary action or other lasting effects on Ray's standing at work. See Hoag, 279 F. Supp. 3d at 477 ("[B]eing 'singled out for excessive scrutiny and discipline' was not [an] adverse employment action." (quoting Bowen-Hooks v. City of New York, 13 F. Supp. 3d 179, 216-17 (E.D.N.Y. 2014) (Brodie, J.))); Chinnery v. N.Y. State Office of Children & Family Servs., No. 10 Civ. 882 (DAB)(FM), 2014 WL 1651950, at *9 (S.D.N.Y. Apr. 25, 2014) ("[T]he 'mere inconvenience' of being questioned . . . does not constitute an adverse employment action."), report & recommendation adopted, 2015 WL 1029601 (S.D.N.Y. Mar. 10, 2015).

Finally, Rachelson's testimony against Ray at the WCB hearing four months after her termination is not an adverse employment action. Even assuming a post-termination action can effect a change in the "terms and conditions" of Ray's employment (which had, by construction, already ended at that time), Vega, 801 F.3d at 85, the FAC alleges no loss of benefits such that it impacted those terms and conditions of employment, see Campbell, 93 F. Supp. 3d at 170.

Ray's termination is therefore the only cognizable adverse employment action pleaded in the FAC, and we proceed to consider whether Ray has plausibly alleged that her race "was a motivating factor in the employment decision," Vega, 801 F.3d at 86. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)). Additionally, as relevant here, "an inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." Id. at 312-13.

The Fund contends that no inference of discrimination arises here because Ray has failed to plead that the white co-workers receiving better treatment were similarly situated to her. The Fund is correct in arguing that, at summary judgment, "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Raspardo, 770 F.3d at 126 (quoting Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d

Cir. 2003)), but whether a plaintiff must carry a similar burden at the motion to dismiss stage is hardly settled,[23] see Nguedi v. Fed. Reserve Bank of N.Y., No. 16 Civ. 636 (GHW), 2017 WL 5991757, at *6 (S.D.N.Y. Dec. 1, 2017) ("[T]here appears to be a developing question in the Circuit . . . : must a plaintiff allege specific facts showing that the comparators are similarly situated in all material respects or are less detailed notice pleadings regarding relevant comparators sufficient to give rise to an inference of discrimination?"). While "[n]umerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiffs' or how they were treated differently by defendants," Blige v. City Univ. of New York, No. 15 Civ. 8873 (GBD)(KHP), 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) (internal quotation marks omitted) (alterations incorporated), report and recommendation adopted, 2017 WL 1064716 (S.D.N.Y. Mar. 21, 2017), and the Second Circuit has also so required in a number of nonprecedential summary orders, see, e.g., Kpaka v. City Univ. of N.Y., 708 F. App'x 703, 705 (2d Cir. 2017); Marcus v. Leviton Mfg. Co., 661 F. App'x 29,

---

[23] Indeed, given that the Supreme Court and Second Circuit have directed distinct modes of analysis for employment discrimination cases at the motion to dismiss stage and those at the summary judgment stage, the Fund's reliance on cases addressing summary judgment in support of such a rule are not entirely persuasive.

32 (2d Cir. 2016); other courts have held to the contrary, see,
e.g., Yang v. Dep't of Educ., No. 14 Civ. 7037 (SLT), 2016 WL
4028131 (E.D.N.Y. July 26, 2016) ("[T]he the law does not require
detailed pleadings regarding the similarly situated
comparators.").

However, we need not definitively resolve this question, as
the FAC fails to plausibly allege an inference of discrimination
regardless.  To the extent that a plaintiff is required to plead
that comparators are similarly situated, the FAC falls well short.
Ray's allegations referencing a comparator discuss only the race
of the comparator and the comparator's conduct, with no allegation
that the comparator is otherwise similarly situated.  FAC ¶¶ 36,
38, 45, 50, 61-62.  But even to the extent that a plaintiff need
not plead similarity in situation, the FAC still falls short.
While Ray does allege that certain Fund employees (who are white)
were better treated than she was, those allegations related only
to other discriminatory acts and not her termination.

That is, Ray does not allege that a similarly situated
comparator outside her protected class was not terminated, nor
does she allege that she was replaced by an employee outside her
protected class.  Accordingly, any inference of discrimination
raised by the FAC requires, at minimum, two steps: (1) that Ray's
race was a motivating factor for her less-favorable treatment on
other occasions, and (2) that such race-based motivation can be

46

extrapolated to her termination. While this two-part inference could conceivably be sufficient to withstand a motion to dismiss under a different set of allegations, its plausibility here is significantly undermined by the fact that the less-favorable treatment that Ray alleges she experienced is dispersed over a period of numerous years and was caused by a number of different individuals.[24] We therefore conclude that Ray has not plausibly alleged that her race was a motivating factor in her termination. Because Ray's termination is the only adverse employment action that the FAC pleads, her discrimination claim is also dismissed.

## III. Conclusion

The Fund's motion to dismiss is granted in its entirety. Ray's NYSHRL claims are barred by the Eleventh Amendment, her Title VII hostile work environment claim fails because she failed to exhaust her administrative remedies, and her Title VII retaliation claim fails because she not does not plausibly allege that she experienced an adverse employment action because of her engagement in protected activities. To the extent the FAC can be interpreted to assert a discrimination claim based on disparate treatment, that claim also fails because the FAC does not raise a plausible inference of discriminatory motive for the one cognizable adverse employment action that it adequately alleges.

---

[24] For the same reason, even if Mirabella's October 14, 2014 assault constituted an adverse employment action, the FAC does not raise the plausible inference that the assault was racially motivated.

Ray has previously been afforded an opportunity to amend her complaint in order to cure the alleged deficiencies identified by the Fund's first pre-motion letter, which sought to dismiss Ray's original complaint and raised many of the deficiencies forming the basis of our decision here.  See Order, June 8, 2017, ECF No. 37; Letter from D. Stan O'Laughlin to the Court, June 1, 2017, ECF No. 35.  Having had the opportunity to amend once, and having made only cursory amendments that did not meaningfully address the deficiencies identified by the Fund, Ray is "not entitled to an advisory opinion from the Court informing [her] of the [additional] deficiencies in the complaint and then an opportunity to cure those deficiencies."  Bellikoff v. Eaton Vance Corp., 481 F.3d 110, 118 (2d Cir. 2007).  Further leave to amend, the scope of which would be significantly limited by Title VII's exhaustion requirement and the statute of limitations, is simply not warranted at this junction.  See Lopez v. CTPartners Exec. Search Inc., 173 F. Supp. 3d 12, 44 (S.D.N.Y. 2016) (Engelmayer, J.) ("[W]here the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'" (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000))).

Therefore, Ray's Title VII claims are dismissed with prejudice.  However, because we lack subject matter jurisdiction over Ray's NYSHRL claims, those claims must be dismissed without

prejudice. See Hernandez v. Conriv Realty Assocs., 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice.").

The Clerk of the Court is respectfully directed to terminate the motion pending at docket entry number 50, to enter judgment in the Fund's favor, and to terminate this case.[25]

**SO ORDERED.**

Dated:    New York, New York
          July _18_, 2018

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[25] Though it does not affect our resolution of the pending motion (and Ray is unlikely to have been prejudiced because her memorandum of law in opposition was not constrained in length), the Fund is reminded that Rule 2.D of this Court's Individual Rules of Practice provide that "[u]nless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages." The Fund's 27-page initial memorandum and 16-page reply memorandum (which also lacks a table of authorities) were plainly non-compliant.

49